AO 440 (Rev. 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

__FOR THE__  District of  __Northern Georgia__

Steven Ivey,
    Plaintiff

**SUMMONS IN A CIVIL CASE**

V.

John W. Snow, Secretary,
U.S. Department of the
Treasury,
    Defendent.

CASE NUMBER: 1:04-cv-0395-JOF

TO: (Name and address of Defendant)

John W. Snow, Secretary
U.S. Department of the Treasury
1500 Pennsylvania Ave, N.W.
Washington, DC, 20220

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

Steven Ivey, (Pro se)
P.O. Box 15884
Chesapeake, VA, 23328

an answer to the complaint which is served on you with this summons, within ___60___ days after service of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the Clerk of this Court within a reasonable period of time after service.

LUTHER D. THOMAS

CLERK  /s/

(By) DEPUTY CLERK

DATE  APR 26 2004


EXHIBIT Def. 2

RECEIVED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

JAN 30 2004

LUTHER D. THOMAS, Clerk
By: _____ Deputy Clerk

FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

JAN 30 2004

LUTHER _____, Clerk
By: _____ Deputy Clerk

United States District Court
For The District of Northern Georgia

Steven Ivey
147 Newberns Landing Rd
Powells Point, NC, 27966

1·04-CV-0395

Civil Action No.

1 04-MI-0032-JOF

V.

John W. Snow
Secretary
U.S. Department of the Treasury
1500 Pennsylvania Ave, NW
Washington, DC, 20220

## Compliant

The issues in this case concern the violations to my First and Fifth Amendments Rights. The above Agency based reprisals and judgments for the plaintiff exercising his First Amendment rights by organizing harassment and persuasions toward the Plaintiff. This led to subsequent complaints and cases as pending before EEOC, MSPB, and US District Court. Any complaints and reports of violations to the Plaintiff's civil rights were meet with harassment of intimidation, physical, and sexual. The refusal of the plaintiff to participate in parties and employee violation to taxpayer documents was meet with continued persuasion. This subsequently led to the Violation of my Fifth Amendment right. During the process of my termination I was encouraged and coerced to incriminate myself and further proceedings by signing an unofficial and deceitful letter by supervisor, Robert Hall and Union Steward, Doug Van Buren.

I am seeking corrective action relating to these charges of back pay and benefits @ $20,000 per year for 4 years = $80,000. I am also seeking compensatory damages of $300,000. I am also seeking payment for out of pocket expenses, pecuniary, and non-pecuniary cost to be settled during procedure and minus any overlapping damages for relative cases.

**I am requesting that the Court appoint me an attorney and allow me to file these actions without payment of fees, costs, and other security. (Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C   2000e** *et seq*: **the Rehabilitation act of 1973, as amended, 29 U.S.C.   791(c).**

_____1-7/04_____          _____/s/ Steven Ivey_____
Date                                Plaintiff

Steven Ivey
147 Newberns Landing Rd.
Powells Point, NC, 27966
~~[address redacted]~~
757-560-9485
iveysteven@hotmail.com

United States District Court
For The District of Northern Georgia

Steven Ivey
147 Newberns Landing Rd
Powells Point, NC, 27966

                                       Civil Action No.

V.

John W. Snow
Secretary
U.S. Department of the Treasury
1500 Pennsylvania Ave, NW
Washington, DC, 20220

                  Compliant
      ( see attached forms as used by the Court)

I am requesting a Trail by Jury.

I am requesting that the Court appoint me an attorney and allow me to file these actions without payment of fees, costs, and other security. (Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C 2000e *et seq*: the Rehabilitation act of 1973, as amended, 29 U.S.C. 791(c).

1/7/04
Date

                                                          Plaintiff
                                              Steven Ivey
                                              147 Newberns Landing Rd.
                                              Powells Point, NC, 27966
                                              757-560-9485
                                              iveysteven@hotmail.com

Steven Ivey
306 South Street
Elizabeth City, NC, 27909
Ph # 252-335-1327

Viola Cole
Department of the Treasury
Treasury Complaint Center
800 K Street, NW, STE 640
Washington, DC, 20001

05/10/02                                                     TD CASE NUMBER: 02-1135

Dear Viola Cole/Dept. of the Treasury,

       This is response to your letter to me dated April 29, 2002 requesting information as further explanation of my complaints and the time line associated with filing of mentioned complaints. In the opening of this letter your major concern deals with not contacting an EEO counselor within 45 days of a related complaint, I will address that concern as I submit the "two" areas of your requested information.

**First Area of Concern:**

      In considering the issue of being terminated as retaliation for "whistleblowing" I am submitting to you the proceedings as ordered by Richard Klein, Administrative Judge, MSPB. These are, to date, four correspondences dated April 24, 2002; May 3, 2002; May 10, 2002; and May 8, 2002. They can best help answer any question you may have and any updates can be forwarded to you from Wade Klein, Attorney, General Legal Services, IRS or myself.

      Your next passage is not clear, it reads, " You state that the harassment you were exposed to came in many forms, such as excessive intimidation factors combined to your private person. You further state that fifty people participating collectively in some way in an incident of harassment which could be viewed as hazing." What I refer to by informing you that I am a private person is that in being a very private person the people I report about manipulated that fact. It seemed to me that it didn't matter how or what I chose to do along that area of my person because these people I mention thought I did not have a right to such a personal choice, I told Winda Daniels in my first tax season, about a week after being in her unit ( this would have been about the first week in March 1999) that " I did not know what was going on or if it was Motherly instinct but that I was basically a private person and did not want to participate in 'weekly pot luck dinners', 'monthly birthday parties' or things such as those that were being circulated." This statement was in reference to some of the complaints that I mentioned because I felt

that there was too much of a familiarity into my personal business and myself. To that statement Winda Daniels replied that, " you mean that you don't want a present at Father's Day, because they give something to the guys even if they are not fathers?" And to that I replied "No." The issue of hazing can be seen by what I just explained about Winda Daniels. Even though I spoke with her the actions that were uncomfortable to me continued. This meant that regardless of what I wanted and was entitled to, those people did whatever they could to prevent it. This meant that I would have to go through those incidences I mentioned (or going to mention) and not to complain, in order to have a positive experience with this job, or be allowed to have a good rating, or as it turned out to even have the job, as entitled to me. I do believe this is, depending on the act itself, to be the basis of hazing. I stated that the harassment came in many forms but did come in a continuous manner by occurring nightly and those participating to increase. Thus, simple issues which might be considered by today's standards as " intervention" into someone's life in my opinion is really an ill-fated rational by people who think they are wise to the ways of the human condition. Then again what I really found out was that it was more in the way of manipulations designed to play favors and preferences for chosen personnel. I made the statement to such people that " I did not join the army" during the second month at this center so I did not understand the obsessiveness into my business, ever how rationalized or unfounded.

List of Harassment (consideration to name spelling and to unknowns to be keep in mind) as Further Explanation of the Two Past Complaint Letters :

1. Kelly Mancle and Ellen (her Lead/Assistant) were rude, blunt and unhelpful in the instructions as to what data transcriber were to accomplish. In particular Kelly Mancle had a double standard for me. This can be the result of the fact that in the first week in her unit after initial training, (Second week of February 1999) she told me that I could not have/listen to a radio/CD player until I made "rating" however all other data transcribers that I went through training with had radios/CD players.
2. I had made plans to attend some classes prior to taking the job at the center and need by the third week in February 1999 to take a monthly test. Since other people were taking time off to go for long weekends to such things as car racing I mentioned to Kelly Mancle that I needed an extra day or so to study. To this, she replied that I could not use my acquired time even though others were using theirs.
3. Kelly Mancle then became vindictive. She would exclude informing me of unit meetings. This is the nature in which I think her behavior became obsessive and in some way she was acting too familiar with me. (This pattern came be seen in what I list further where in one way or another Kelly Mancle was associated with other harassment issues.)
4. About one month after starting, March 1999, I was moved to Winda Daniels' unit, but when I received performance ratings Kelly Mancle signed the forms and not Winda Daniels and the next tax season in Lisa Lee's unit the same thing happened. I'm not sure why Kelly Mancle would be signing these forms?
5. During times of harassment in the two other units I was in during the rest of my time at the center Kelly Mancle would show up and leer and try to intimidate me. She

would come into the unit and stand as close to me as possible.
This would have been in April and May of 1999. She would do the
same when I was in Lisa Lee's unit the next year, 2000. The dates for her being
there in 2000 were April 24, 26, 27, May 2, 9 and later dates that season. Other
managers to my understanding were not suppose to be in other units. So these visits
to me do not add up to anything rational?

6. During my last few days in 2000 a guy from Kelly's unit presented me with a much unwanted invitation, which I will mention later.
7. On the first night of my return in 2001 Kelly Mancle conducted a refresher course in which she tried to brow beat me and leer suggestively. This is the night that was mentioned as a means of terminating me.
8. In March of 1999 I was seated beside a girl in Winda Daniels unit, Angela. Angela began to be counterproductive in her harassment. Initially she would play her music in her earphones loud and sing along so that I could hardly hear my own earphones.
9. When reporting this to Winda she would get even more defiant in the weeks to follow she "chair dance" wave her arms in my direction.
10. In response to Angela's actions Winda would treat the situation as if it were my fault.
11. This type of behavior Angela would encourage in the other people along the row, they were Dyna, Charles and two other unknown black girls. This would be in the nature of excessive talking so as to disturb me, passing gas while standing/walking behind my chair, and bumping/hitting/running into the back of my chair. This would have been going on from April to May.
12. By June, 1999 I moved two rows away from these people but in doing so Angela attempted to exert so type of action towards me in which she had to somehow try to provoke me. One incidence she tried would move to try and position herself in my line of sight to the speaker of a meeting, another unit manager and Winda, covering when people would be furloughed. (This would be the second to the last week of work in 1999)
13. In the last two weeks of 1999, as I was working I would have to stop to deal with a problem concerning some documents and in the process I would rest my head/chin on my finger or hand in some kind of gesture while thinking ect. When it was time for the unit break I would go about my business of timesheet ect. but would notice Angela standing and staring toward me and once she realized I saw her she would mimic the gesture that I had previously been doing.
14. Also during the last month and after I moved there were people in the next unit who began hitting the back of my chair. This unit's manager was Dwayne and the girls names are unknown to me. At one point I did ask them if they could not hit my chair as they walked by it. They thought this was funny and the girl on the end told me that "I could ask nicer." I told her that "I shouldn't have to ask at all." This is what I mean by a double standard I not only had to "baby-sit " these girls but I had to do it a certain way. This is also what I hint at as being hazing.
15. There was a van that would seem to pack near my car in the parking lot and sometimes in a position so that when I would be pulling out the headlights would come on to catch me right in the eyes. It was a smaller blue and white conversion van. This same van would wait and follow me off the parking lot and one time tried to position itself in my lane of traffic weaving in front and around my car.


There was a girl Julie who noticed this one night as we left. I am not sure but I believe this was Angela's van.

16. One of the last nights of 1999 as I was leaving Angela stepped off the walkway in front of my oncoming car. This was less than about 10 feet ahead of me. It was a sudden movement and deliberate.

17. During the last two months of the 1999 season I would arrive at work to set up my desk and make adjustments to my chair ect, Sometimes when I finished I would go to the restroom or whatever only to find that when I came back my chair had been readjusted. There was a lady there usually in my unit who either did it or knows who did I am do not know her name but she sat direct two seat ahead of me and facing me; she would use the phone at time making travel arrangements and have the people call her back at the unit. I believe this is how my CD player was broken that season.

18. On returning the next tax season, 2000, I reported to Winda Daniels unit and was assigned a seat next to a girl who's name was Angela. She would strike up a conversation with me that seemed to have a predetermined theme. She told me that her mother worked a civil service job in Florida and in doing so would collect a paycheck as this Angela put it "for doing nothing" and stated that her mother had no shame in taking the money. This girl named "Angela" and her choice of conversation seemed to be of no coincidence considering I had written to the Tax Commissioner's Office and the OSC about such issues and of her name. (The Angela theme seems to me like that with Kelly Mancle.)

19. Within the first week of returning in February 2000, I was assigned to Lisa Lee's unit. I was assigned a seat in this unit facing some part time transcribers I refer to as DD, SW, BT, and TM. ( These initials are relative to stock symbols, DD = Dupont, stock making news on the days these girls exhibited certain disruptive behavior.) In facing their row DD was the girl on the end, my left, the assistant lead for that unit; SW was next to here but almost directly in front of me, she was an Asian girl; BT was a black girl just to my right and was also referred to as Angela but I don't think that was her real name; and then next was TM, another black girl. These girls for about four nights a week would do just about any time of noise or gesture to get my attention and if I did look to see what was going on they would leer at me or "showoff" or "mug" me. DD and SW in particular would in going and coming to their desk linger in A lingering manner trying to disrupt me and get my attention or for whatever reason I don't know. This continued nightly.

20. BT and TM would mimic me in different ways such as coughing when I did. They Would touch and scratch their face or head when I did.

21. The girl to my left in my unit began to hit the back of my chair. I reported this to Lisa Lee several times but Lisa Lee said that the girl said it was by accident. The Chairs are arranged with more than four to five feet apart if she is anywhere near My chair she is already closer than normal.

22. During the first week of being in this unit it was announced that Robert Hall had Taken the place of Judy Jordan. He at one point in those beginning nights was

Standing to my right sort of southeast of me and pointing and laughing in my direction an was inviting other managers to come and stare at me. Why I am not Sure but it was a uncomfortable situation. I believe it was done to intimidate me?

In regards to not contacting an EEO counselor, there were many different reasons. First I was unaware that there were such individuals on the property to handle such complaints. Initially, I thought that writing to the tax commissioner and the OSC was the proper procedure. It was in a memo from the tax commissioner's office that suggested that anyone having complaints contact his office and the OSC. There was a pamphlet attached to the memo listing the purpose of the OSC. In that pamphlet (which I still have) it states that if they can not remedy the problem then they will file the complaint with the Merit System Protection Board, MSPB. However, that is not the procedure at all as I found out in a letter from the OSC directing me on how to file the with the MSPB because I had to do it. I the correspondences the tax commissioner's Office such a procedure was never mention or suggested by Esparanza Balandarn. Because these issues were of a continuous nature I was not sure what to do. Initially, in contacting union stewards it was never an issue or option they recommended, which in hindsight I find strange. I knew of the EEOC but not that there had to be a process with an EEO counselor on the property. In the beginning I merely wished for the activities to be corrected and felt that the people that I contacted could remedy such situations. It was only in my termination letter that I tried to contact the EEO counselor at the number given that I realized that there was such a person. However, I was given the run around or no response to the numbers given and no return call with messages left. I then contacted the EEOC at the Federal Center on Alabama Street in Atlanta and sent them the information I had within 45 days of being terminated. They returned the packet of information to me, however, and suggested that I send it to the Human Resources Department/Labor Relations Department at 401 W. Peachtree Street in Atlanta. From these people I was informed about contacting the EEO counselor at the Chamblee Center and tried again with no luck. It was then that I called the EEOC in DC. From them I was given a call back and information to contact Brenda Floyd a regional representative who then called the EEO rep Annette Curry of the Chamblee property then to me. This is the type of problems that exist at the Chamblee property and it is present in every facet of procedure. These people that I mention and those responsible for them seem to be undermining the proper procedure and protocol.

**Second Area of Concern**

With regards to physical harassment, as I have just explained it was in the nature of the people I have mentioned and those who did it to whom I don't know who were hitting the back of my chair. I don't mean just grazing it my so bluntly that it jerked me forward. This also meant that in Winda Daniels unit in 1999 it was so frequent that, someone, I am not sure who, called security of which two guards came and stood behind

my chair for a little while. I am not sure of the total circumstances. During about May of 2000 SW as mentioned before was trying to solicit individuals to try and intimidate me, one of which was an Asian guy who positioned himself in front of me in passing and nudge me as if to provoke a fight.

The issues of sexual harassment was that of being given a invitation as I mentioned earlier from a guy in Kelly Mancle's unit in June of 2000. It was an invitation to a gay pool party. I do not know the guy or why he would assume he could invite me. There was the lead, Regina Mayfield and the manager of the unit beside my unit who perpetuated the incident further. I do believe they were in on it somehow because they seem to know what it was before I did. Lisa Lee would a couple of times try to act in a manner like a girl coming on to me in an attempt to resolve some of the issues I mentioned. I guess she figured that the "sexy" approach would help persuade me. In general there was an air of sexual overtures and suggestive mannerism so as to use sex as a mediator.

Once again here as before the reasons for not contacting an EEO counselor are the same as stated before with the first concerns. At different points I was assured that the problems would be dealt with remedied but to date I do not feel that they have been. The important note to mention with the EEO counselor is that in its list of things it can do and can not do it states that they do not have the authority to force any directives; their main purpose is to act only as a mediator.

Should there be any further information that you need, please contact me. I have listed as much as I could at this point but I feel that there is more, however, at the moment I am limited as to time.

Sincerely,


Steve Ivey



U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
Office of Federal Operations
P.O. Box 19848
Washington, D.C. 20036

Steven G. Ivey,
Complainant,

v.

John W. Snow,
Secretary,
Department of the Treasury,
Agency.

Appeal No. 01A33016

Agency No. 02-1135

Hearing No. 110-A3-8092X

### DECISION

Complainant filed a timely appeal with this Commission from the agency's order dated March 24, 2003, dismissing his complaint of unlawful employment discrimination in violation of Title VII of the Civil Rights Act of 1964 (Title VII), as amended, 42 U.S.C. § 2000e et seq. The appeal is accepted pursuant to 29 C.F.R. § 1614.405. In his complaint, complainant alleged that he was subjected to discrimination on the bases of race (Caucasian), color (white), sex (male), and reprisal for prior EEO activity when his employment was terminated during the probationary period effective March 7, 2001.

The record reveals that during the relevant time, complainant was employed as Data Transcriber, GS-356-03, at the agency's Elizabeth City, North Carolina's, Data Conversion Branch. Believing he was a victim of discrimination, complainant sought EEO counseling and subsequently filed a formal complaint on March 18, 2002. At the conclusion of the agency's investigation, complainant was informed of his right to request a hearing before an EEOC Administrative Judge (AJ) or alternatively, to receive a final decision by the agency. Complainant requested a hearing before an AJ.

On February 14, 2003, the AJ issued a decision dismissing the complaint because complainant failed to prosecute his case. The AJ found that complainant failed to appear at the February 14, 2003 hearing. The AJ found that he had mailed an Order on November 22, 2002, to the agency

09/29/2004 13:08 FAX 404 581 6181          U S ATTORNEY'S OFFICE                    ☒030
Case 1:05-cv-02277-EGS   Document 6-6   Filed 01/13/2006   Page 12 of 15

2                                                                          01A33016

and complainant scheduling a pre-hearing conference on February 5, 2003, with a hearing set for February 14, 2003. The AJ found that complainant failed to submit the pre-hearing conference report (including a witness list) as required by the scheduling order and did not appear at the pre-hearing conference scheduled on February 5, 2003. The AJ stated that he issued an Order to Show Cause dated February 5, 2003, ordering complainant to show cause for his failure to submit any witness list or appear at the pre-hearing conference on February 5, 2003. The AJ noted that on February 12, 2003, complainant facsimiled a request for a continuance. The AJ denied the request as untimely and not justified. The AJ said that, in his request, complainant stated that he did not receive the acknowledgment and scheduling order until the end of January 2003. The AJ found that nothing in complainant's request set forth sufficient grounds for a continuance.

In its final order the agency stated that it was fully implementing the AJ's decision dismissing the complaint pursuant to 29 C.F.R. § 1614.107(a)(7).

We find the agency's dismissal of the complaint to be improper. It is noted that the AJ has the authority to sanction a party for failure without good cause shown to fully comply with an order. 29 C.F.R. § 1614.109(f)(3). However, dismissal of a complaint by an AJ as a sanction is only appropriate in extreme circumstances, where the complainant has engaged in contumacious conduct, not simple negligence. *See Hale v. Department of Justice*, EEOC Appeal No. 01A03341 (December 8, 2000). Upon review, the Commission finds that complainant's failure to appear at the hearing, appear at the pre-hearing conference, and failure to submit a pre-hearing conference report is insufficient, under the instant circumstances, to warrant dismissal of the entire complaint. To the extent that the AJ intended to sanction complainant by dismissing the entire complaint, the Commission finds that the AJ's sanction to dismiss the complaint was improper. In the instant case, the Commission finds that the appropriate sanction is to cancel the hearing and remand the complaint to the agency for a decision without a hearing.

Dismissal of the complaint under 29 C.F.R. § 1614.107(a)(7) is inappropriate under the instant circumstances, because the investigation has apparently been completed and there is apparently sufficient information in the record to adjudicate the complaint. Therefore, we shall remand the matter to the agency so that it may issue a decision on the complaint.

The agency's decision dismissing the complaint is REVERSED and we REMAND the complaint to the agency for further processing pursuant to the Order herein.

ORDER

Within sixty calendar days from the date this decision becomes final, the agency shall take final action on the complaint in accordance with 29 C.F.R. 1614.110. A copy of the agency's final decision must be sent to the Compliance Officer referenced herein.

### IMPLEMENTATION OF THE COMMISSION'S DECISION (K0501)

Compliance with the Commission's corrective action is mandatory. The agency shall submit its compliance report within thirty (30) calendar days of the completion of all ordered corrective action. The report shall be submitted to the Compliance Officer, Office of Federal Operations, Equal Employment Opportunity Commission, P.O. Box 19848, Washington, D.C. 20036. The agency's report must contain supporting documentation, and the agency must send a copy of all submissions to the complainant. If the agency does not comply with the Commission's order, the complainant may petition the Commission for enforcement of the order. 29 C.F.R. § 1614.503(a). The complainant also has the right to file a civil action to enforce compliance with the Commission's order prior to or following an administrative petition for enforcement. See 29 C.F.R. §§ 1614.407, 1614.408, and 29 C.F.R. § 1614.503(g). Alternatively, the complainant has the right to file a civil action on the underlying complaint in accordance with the paragraph below entitled "Right to File A Civil Action." 29 C.F.R. §§ 1614.407 and 1614.408. A civil action for enforcement or a civil action on the underlying complaint is subject to the deadline stated in 42 U.S.C. 2000e-16(c) (1994 & Supp. IV 1999). If the complainant files a civil action, the administrative processing of the complaint, including any petition for enforcement, will be terminated. See 29 C.F.R. § 1614.409.

### STATEMENT OF RIGHTS - ON APPEAL

### RECONSIDERATION (M0701)

The Commission may, in its discretion, reconsider the decision in this case if the complainant or the agency submits a written request containing arguments or evidence which tend to establish that:

1. The appellate decision involved a clearly erroneous interpretation of material fact or law; or

2. The appellate decision will have a substantial impact on the policies, practices, or operations of the agency.

Requests to reconsider, with supporting statement or brief, must be filed with the Office of Federal Operations (OFO) **within thirty (30) calendar days** of receipt of this decision or **within twenty (20) calendar days** of receipt of another party's timely request for reconsideration. See 29 C.F.R. § 1614.405; Equal Employment Opportunity Management Directive for 29 C.F.R. Part 1614 (EEO MD-110), 9-18 (November 9, 1999). All requests and arguments must be submitted to the Director, Office of Federal Operations, Equal Employment Opportunity Commission, P.O. Box 19848, Washington, D.C. 20036. In the absence of a legible postmark, the request to reconsider shall be deemed timely filed if it is received by mail within five days of the expiration of the applicable filing period. See 29 C.F.R. § 1614.604. The request or opposition must also include proof of service on the other party.

                                        4                          01A33016

Failure to file within the time period will result in dismissal of your request for reconsideration as untimely, unless extenuating circumstances prevented the timely filing of the request. Any supporting documentation must be submitted with your request for reconsideration. The Commission will consider requests for reconsideration filed after the deadline only in very limited circumstances. *See* 29 C.F.R. § 1614.604(c).

### COMPLAINANT'S RIGHT TO FILE A CIVIL ACTION (R0900)

This is a decision requiring the agency to continue its administrative processing of your complaint. However, if you wish to file a civil action, you have the right to file such action in an appropriate United States District Court **within ninety (90) calendar days from the date that you receive this** decision. In the alternative, you may file a civil action **after one hundred and eighty (180) calendar days** of the date you filed your complaint with the agency, or filed your appeal with the Commission. If you file a civil action, you must name as the defendant in the complaint the person who is the official agency head or department head, identifying that person by his or her full name and official title. Failure to do so may result in the dismissal of your case in court. "Agency" or "department" means the national organization, and not the local office, facility or department in which you work. **Filing a civil action will terminate the administrative processing of your complaint.**

### RIGHT TO REQUEST COUNSEL (Z1199)

If you decide to file a civil action, and if you do not have or cannot afford the services of an attorney, you may request that the Court appoint an attorney to represent you and that the Court permit you to file the action without payment of fees, costs, or other security. *See* Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*; the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 791, 794(c). **The grant or denial of the request is within the sole discretion of the Court.** Filing a request for an attorney does not extend your time in which to file a civil action. Both the request and the civil action must be filed within the time limits as stated in the paragraph above ("Right to File A Civil Action")

FOR THE COMMISSION:

_[signature]_
_____
Carlton M. Hadden, Director
Office of Federal Operations


OCT 1 4 2003
_____
Date

5                                              01A33016

## CERTIFICATE OF MAILING

For timeliness purposes, the Commission will presume that this decision was received within five (5) calendar days after it was mailed. I certify that this decision was mailed to complainant, complainant's representative (if applicable), and the agency on:

OCT 1 4 2003
---
Date

*[signature]*
Equal Opportunity Assistant